IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| I.B. of T. UNION LOCAL NO. 710 PENSION FUND, by and through its Board of Trustees, THOMAS CONELIAS, BERNARD SHERLOCK, DELMAR SCHAEFER, SAMUEL PILGER, GARY CALDWELL and DANIEL HOYER; and | : : : : : : : | Civil Action No. 17 CV 5532 |
| I.B. of T. UNION LOCAL NO. 710 HEALTH AND WELFARE FUND, by and through its Board of Trustees, THOMAS CONELIAS, BERNARD SHERLOCK, DELMAR SCHAEFER, SAMUEL PILGER, GARY CALDWELL and DANIEL HOYER, Plaintiffs | : : : : : : : : | Non-Jury |
| v. | : : | |
| PATRICK FLYNN, MICHAEL SWEENEY, NEAL LONDON, HUGH ROBERTS, JR., Defendants | : : : | |

## COMPLAINT

### INTRODUCTION

This civil action is brought against four former trustees of the Plaintiff employee benefit funds to recover fund assets dissipated by the former trustees through their participation in prohibited transactions in breach of their fiduciary duty to the funds. By their egregious conduct, the former trustees caused the Plaintiff funds collectively to lose significant assets – assets meant to provide benefits to the Plaintiff funds' participants and beneficiaries. The Plaintiff funds' current trustees bring this action on behalf of their participants and beneficiaries under Sections 404 (breach fiduciary duty), 406(a) (prohibited transactions) and (b) (self-dealing), 409 (liability for breach of fiduciary duty) and 502 (civil enforcement) of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. § 1104, 1106(a) and (b), 1109 and

1

1132. In addition to the recovery of the unlawfully dissipated fund assets, the Plaintiff funds seek interest on the recovered funds, reasonable attorneys' fees and costs and such further equitable relief as the Court may deem appropriate to enforce the provisions of Title I of ERISA.

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this matter under 29 U.S.C. § 1132(c)(2), 29 U.S.C. § 185 and 28 U.S.C. §§ 2201.

2. Venue is appropriate in this Court under 28 U.S.C. § 1391(b)(1) and (2) as the Pension and Health and Welfare Funds conduct business at their office located in Mokena, Illinois.

## PARTIES

3. Plaintiff I. B. of T. Teamsters Local Union No. 710 Pension Fund ("Pension Fund") is a jointly administered, multiemployer defined benefit pension fund within the meaning of Section 302(c)(5) of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 186(c)(5) and Sections 3(3) and 3(37)(A) of ERISA, 29 U.S.C. §§ 1002(3) and (37)(A). The Pension Fund's business address is 9000 W. 187th Street, Mokena. Illinois 60448.

4. The Pension Fund is administered by a Board of Trustees ("Pension Trustees") in accordance with Section 302(c)(5) of the LMRA, 29 U.S.C. § 186(c)(5), and exists for the exclusive purpose of providing retirement benefits to its participants and beneficiaries and defraying the reasonable expenses of administering the pension plan, in accordance with Section 404(a) of ERISA, 29 U.S.C. § 1104(a). The Pension Fund receives contributions from employers that are parties to collective bargaining agreements with the Teamsters Local Union No. 710 ("Local 710").

5. Plaintiff I. B. of T. Teamsters Local Union No. 710 Health and Welfare Fund ("Welfare Fund") is a jointly administered, multiemployer employee benefit plan within the meaning of Section 302(c)(5) of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 186(c)(5) and Section 3(3) and 3(37)(A) of ERISA, 29 U.S.C. §§ 1002(3) and (37)(A). The Welfare Fund's business address is 9000 W. 187th Street, Mokena. Illinois 60448.

6. The Welfare Fund is administered by a Board of Trustees ("Welfare Trustees") in accordance with Section 302(c)(5) of the LMRA, 29 U.S.C. § 186(c)(5), and exists for the exclusive purpose of providing health and welfare benefits to its participants and beneficiaries and defraying the reasonable expenses of administering the welfare plan, in accordance with Section 404(a) of ERISA, 29 U.S.C. § 1104(a). The Welfare Fund receives contributions from employers that are parties to collective bargaining agreements with Local 710.

7. Plaintiffs Thomas Conelias, Bernard Sherlock and Delmar Schaefer are individual Trustees of the Pension and Welfare Funds and were appointed by Local 710 pursuant to the terms of both Funds' respective Restated Agreement and Declaration of Trust ("Trust Agreement"). Plaintiffs Samuel Pilger, Gary Caldwell and Daniel Hoyer are individual Trustees of the Pension and Welfare Funds and were appointed by employers that are parties to a collective bargaining agreement with Local 710. Collectively, these six trustees are referred to as the "Fund Trustees" or "Funds' Trustees."

8. Defendant Patrick Flynn was, at all times relevant to this action, and until his removal by the International Brotherhood of Teamsters ("IBT"), a Local 710-appointed Trustee of the Pension and Welfare Funds and a fiduciary of the Funds as defined by Section 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A). Additionally, during all times relevant to this action, Flynn

3

was the Secretary Treasurer of Local 710. Upon information and belief, Flynn resides at 2883 Joela Drive, New Lenox, IL 60451.

9. Defendant Michael Sweeney was, at all times relevant to this action, and until his removal by the IBT, a Local 710-appointed Trustee of the Pension and Welfare Funds and a fiduciary of the Funds as defined by Section 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A). Additionally, at all times relevant to this action, Sweeney was the Vice President and later the President of Local 710. Upon information and belief, Sweeney resides at 16549 Wayne Drive, LaPine, OR 97739.

10. Defendants Flynn and Sweeney were removed as Trustees of the Pension and Welfare Funds, as well as from their respective Local 710 offices, on July 30, 2014 by the IBT based upon a recommendation by an Independent Review Board that they, as well as other Local 710 officers, engaged in financial malfeasance. The IBT placed Local 710 into trusteeship on this same date.

11. Additionally, at all times relevant to this action, James Dawes served as a Local 710-appointed Trustee to the Pension and Welfare Funds and was a fiduciary of the Funds as defined by Section 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A). He was removed from his Trustee positions on or about July 30, 2014. Dawes is now deceased and therefore, not a defendant in this action.

12. Defendant Neal London was, at all times relevant to this action, an Employer-appointed Trustee of the Pension and Welfare Funds and a fiduciary of the Funds as defined by Section 3 (21) (A) of ERISA, 29 U.S.C. § 1002(21)(A). London resigned from his Trustee positions on or about November 1, 2014. Upon information and belief, London resides at 8440 Callie Avenue, Unit 611, Morton Grove, IL 60053.

13. Defendant Hugh Roberts, Jr. was, at all times relevant to this action, an Employer- appointed Trustee of the Pension and Welfare Funds and a fiduciary of the Funds as defined by Section 3 (21) (A) of ERISA, 29 U.S.C. § 1002(21)(a). Roberts resigned from his Trustee positions on or about February 1, 2015. Upon information and belief, Roberts resides at 5415 Grouse Lane, Richmond, IL 60071.

14. Additionally, at all times relevant to this action, Phillip Stanoch served as an Employer-appointed Trustee to the Pension and Welfare Funds and was a fiduciary to the Funds as defined by Section 3 (21) (A) of ERISA, 29 U.S.C. § 1002(21)(A). Stanoch, resigned from his Trustee positions on or about July 1, 2015. Stanoch is now deceased and therefore, is not a defendant in this action.

15. At all times relevant to this action, Defendants Flynn, Sweeney, London and Roberts (collectively the "Former Trustees") were charged under the terms of the Pension and Welfare Funds' respective Trust Agreements with the administration of the Funds and were the "Administrator" of the Funds as defined by Section 3(16)(A) of ERISA, 29 U.S.C. § 1002(16)(A).

16. While serving as Trustees of the Pension and Welfare Funds from 2000 to 2014, the Former Trustees exercised discretion with respect to the transactions described below. As such, the Former Trustees were fiduciaries pursuant to Sections 3(21)(A)(i) and (iii) of ERISA, 29 U.S.C. §§ 1002(21)(A)(i) and (iii).

17. Further, as Trustees of the Pension and Welfare Funds and officers of Local 710 and/or the Employer, the Former Trustees were parties in interest to both Funds pursuant to Sections 3(14)(A) and (H) of ERISA, 29 U.S.C. §§ 1002(14)(A) and (H).

5

## **FACTS – PENSION FUND**

18. On March 31, 2006, the Former Trustees retained Commonwealth Realty Advisors, Inc. ("CRA") to act as a Qualified Professional Asset Manager ("QPAM") and to conduct a study to determine whether the construction of an office building to house the Pension Fund and to lease office space to the Welfare Fund, Local 710 and other businesses was a feasible prospective investment for the Pension Fund.

19. In 2006, CRA submitted a report to the Pension Fund, titled "Fund's Office Options Analysis," in which CRA discussed several options for the Pension Fund and recommended that the Pension Fund purchase land and construct an office building to be occupied by the Pension and Health and Welfare Funds and Local 710.

20. CRA's 2006 analysis and recommendation to the Pension Fund were based upon the construction and filling out of a building of 5,000 to 10,000 square feet.

21. Based on the CRA's recommendation, on February 21, 2008, the Former Trustees directed the Pension Fund to form Mokena 191/88 LCC ("Mokena 191/88"), a wholly owned subsidiary of the Pension Fund, for the express purpose of acquiring, developing, managing, leasing, mortgaging, or pledging property in Mokena, Illinois. At the same time, the Former Trustees appointed former Local 710 appointed Trustee Dawes and Defendant London as co-managers of Mokena 191/88. Dawes and London held these positions throughout the construction of the Mokena, Illinois office property.

22. With the Former Trustees' approval, on December 4, 2008, Mokena 191/88 purchased a lot in Mokena, Illinois for $697,775.50.

23. In January, 2009, CRA ordered an appraisal of the estimated value for a building on this lot which ultimately became known as 9000 West 187th Street Mokena, Illinois 60448 ("Mokena").

24. The appraisal for the net rentable square footage of the building obtained by CRA was based on 30,000 square feet. Based on this square footage, the building appraised at $6,300,000 at stable occupancy.

25. The actual net rentable space of the building was not 30,000 square feet, however; it was 26,411 square feet. Thus, the appraisal inflated the overall value of the building.

26. Construction on the lot commenced in February, 2009 with the finished building comprising 30,000 square feet, three times the size of the original projection for the building.

27. Between 2006, when CRA conducted its analysis and recommended the purchase of land and the construction of the Mokena office building, and February, 2009 when construction commenced, a recession occurred during which the real estate market experienced a dramatic decline.

28. Notwithstanding that the feasibility study upon which the Pension Fund relied to construct the Mokena building was conducted in 2006; that the study was based upon a 5,000 to 10,000 square foot building; and that a recession had occurred within the years immediately preceding construction, the Former Trustees failed to direct CRA to conduct an updated market analysis to examine either the prudence and reasonableness of constructing a 30,000 square foot building in the first place or the ability to lease the net rentable space of the building, taking into consideration what impact the recession and the resulting decline in the real estate market would have on the pending project.

29. In addition to the impact of the outdated analysis on the prudence and reasonableness to move forward with construction, the rentability of office space to businesses other than the Welfare Fund and Local 710 was affected by the building's Common Area Maintenance ("CAM") charges per square foot. The CAM charges were significantly higher than the figures used by CRA in its initial analysis and also were higher than the CAM cost for buildings located in the same geographic area and of a similar size.

30. The inflated overall value of the building and the inflated CAM costs significantly impacted Mokena 191/88's ability to obtain tenants for the unoccupied space.

31. The Pension Fund currently has rented office space to the Welfare Fund and Local 710, but there has been approximately 4,000 square feet of the building that has been unoccupied since inception.

## FACTS – WELFARE FUND

32. The Former Trustees exercised their discretion to purchase $245,036 in furniture and fixtures for the Welfare Fund with Pension Fund assets.

33. The Pension Fund did not seek reimbursement from the Welfare Fund for the furniture and fixtures.

34. In its investigation of the Pension Fund, the DOL determined that this purchase constituted a prohibited transaction and thereby a violation of Section 406(a) and/or (b) of ERISA, 29U.S.C. § 1106(a) and (b).

35. In order to correct this violation, the Pension Fund billed the Welfare Fund, and the Welfare Fund reimbursed the Pension Fund for the cost of the furniture and fixtures.

36. However, because of the Former Trustees action, the Welfare Fund must pay an excise tax on the cost of the furniture and fixtures to the IRS by August 31, 2017. Presently, it is estimated that the excise tax will be more than $36,000.00.

37. Had the Former Trustees not permitted this transaction, the Welfare Fund would not have incurred the IRS excise tax.

38. By agreeing to purchase furniture and fixtures for the Welfare Fund with Pension Fund assets, the Former Trustees breached their fiduciary duty to the Pension Fund and the Welfare Fund and engaged in a prohibited transaction.

**ERISA**

39. Section 3(21)(A) of ERISA provides in relevant part: ". . . a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets . . . or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan." 29 U.S.C. § 1002 (21)(A).

40. Section 404(a)(1) of ERISA provides in relevant part: ". . . a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and -

    (A) for the exclusive purpose of:

        (i)    providing benefits to participants and their beneficiaries; . . . and

    (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims; . . . ."

41. ERISA Section 406(a) provides in relevant part:

    (1) A fiduciary with respect to a plan shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect –

    . . .

    (C)    furnishing of goods, services, or facilities between the plan and a party in interest; and

    (D)    transfer to, or use by or for the benefit of, a party in interest, of any assets of the plan; . . . .

42. ERISA Section 406(b) provides in relevant part: "A fiduciary with respect to a plan shall not. . .

    (1) Deal with the assets of the plan in his own interest or for his own account,

    (2) In his individual or in any other capacity act in any transaction involving the plan on behalf of a party (or represent a party) whose interests are adverse to the interests of the plan or the interests of its participants or beneficiaries . . . "

43. ERISA Section 409 provides:

    (a) Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this title shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary. . . .

**COUNT I**
**Pension Fund v. All Defendants**
**<u>Breach of Fiduciary Duty</u>**

44. Plaintiffs incorporate by reference paragraphs 1 through 43 above as though fully set forth herein.

45. Section 2.03 of the Pension Fund's plan document provides that the "Trustees designated by the Trust Agreement together with their successors designated and appointed in accordance with the terms of the Trust Agreement . . . shall be the named fiduciaries within the meaning of Section 402(a)(2) of [ERISA]."

46. Section 3.02 of the Pension Fund's Trust Agreement provides that the "Trustees shall hold, manage, care for, and protect the Trust Fund."

47. During the period from 2000 to 2014, the Former Trustees served as Trustees of the Pension Fund and exercised discretion with respect to the construction of the 9000 West 187th Street, Mokena, IL ("Mokena") office building. As such, the Former Trustees were fiduciaries of the Pension Fund pursuant to Section 3(21)(A) (i) and (iii) of ERISA, 29 U.S.C. §§ 1002(21)(A)(i) and (iii).

48. At all times relevant to the consideration of constructing a building in Mokena, the Former Trustees were obligated as Pension Fund fiduciaries to ensure that CRA's analysis was accurate, reasonable and feasible given the significant difference in the 5,000 – 10,000 square footage used in CRA's initial analysis and the decision to construct a 30,000 square foot building three times the size initially recommended by CRA; the intervening recession and the resulting decline in the real estate market; and CRA's analysis of estimates of the CAM cost for the Mokena building.

49. In February, 2009, the Former Trustees moved forward with construction of the Mokena building based upon a 2006 analysis notwithstanding the intervening recession and the increase in square footage without obtaining an updated analysis to determine if construction was prudent, reasonable and feasible in light of the passage of time and intervening circumstances.

50. A prudent man in the Former Trustees' position would have taken the reasonable and necessary steps to ensure that between 2006 and February, 2009, no significant events occurred or factors changed that would impact the feasibility of moving forward with construction of the Mokena building.

51. Had the Former Trustees obtained an updated analysis of the building project before commencing construction, they would have learned that the real estate market had drastically declined due to the recession; that errors were made in determining the value and net rentable space of the building; and that the CAM costs were overpriced when compared to comparable building in its geographical area.

52. Because of the Former Trustees' failure to take such a prudent and reasonable step, they caused the Pension Fund to incur losses on the building in the approximate amount of $2,769,994.00.

53. In addition, due to the Former Trustees' inaction, the Pension Fund lost investment returns in an amount to be determined at trial.

54. The Former Trustees' failure to obtain an updated analysis prior to commencing construction of the Mokena building constitutes a breach of their fiduciary duty in violation of Sections 404(a)(1)(A)(i) and (B) and 406(a)(1)(C) and (D) of ERISA, 29 U.S.C. § 1104(a)(1)(A)(i) and § 1106(a)(1)(C) and (D).

55. Pursuant to Section 409 of ERISA, 29 U.S.C. § 1109, the Former Trustees are obligated to reimburse the Pension Fund for the losses it incurred because of the breach.

WHEREFORE, the Plaintiff Pension Fund, by and through its Board of Trustees, respectfully requests the Court to enter judgment in its favor; to award the Fund the losses it incurred on the building plus interest equal to the Fund's investment returns from on or about January 1, 2010 until final resolution of this action; reasonable attorneys' fees and costs; and such further equitable relief as the Court may deem appropriate to enforce the provisions of Title I of ERISA.

## COUNT II
### Pension Fund v. All Defendants
### Engagement in Prohibited Transaction

56. Plaintiffs incorporate by reference paragraphs 1 through 55 above as though fully set forth herein.

57. ERISA Sections 406(a)(1)(C) and (D), 29 U.S.C. §§ 1106(a)(1)(C) and (D), provide, in pertinent part, that a fiduciary with respect to an employee benefit fund shall not cause the plan to engage in a transaction, if he or she knows or should know that such transaction constitutes a direct or indirect furnishing of goods, services or facilities between the plan and a party in interest with respect to the plan; or a transfer to, or use by, or for the benefit of, a party in interest, of any assets of the plan.

58. Prohibited Transaction Exemption 84-14, as amended, permits certain party in interest transactions provided the provisions of PTE 84-14 are satisfied.

59. One such provision requires the transaction to provide terms at least as favorable as the terms of an arm's-length transaction between unrelated parties.

60. Due to the flaws in CRA's analysis, as described *supra*, the construction of the Mokena building was not as favorable as the terms of an arm's-length transaction between unrelated parties, and therefore, did not comply with the provisions of PTE 84-14.

61. Accordingly, the Former Trustees violated Sections 406(a)(1)(C) and (D) of ERISA, 29 U.S.C. §§ 1106(a)(1)(C) and (D).

62. Because of the Former Trustees' engagement in the aforementioned prohibited transaction, the Pension Fund incurred losses on the building in the amount of $2,769,994.00.

63. Pursuant to Section 409 of ERISA, 29 U.S.C. § 1109, the Former Trustees are obligated to reimburse the Pension Fund for its losses due to their engagement in a prohibited transaction.

WHEREFORE, the Plaintiff Pension Fund, by and through its Board of Trustees, respectfully requests the Court to enter judgment in its favor; to award the Fund the losses it incurred on the building plus interest equal to the Fund's investment returns from on or about January 1, 2010 until final resolution of this action; reasonable attorneys' fees and costs; and such further equitable relief as the Court may deem appropriate to enforce the provisions of Title I of ERISA.

## COUNT III
### Pension Fund v. Patrick Flynn and Michael Sweeney
### Self-Dealing

64. Plaintiffs incorporate by reference paragraphs 1 through 63 above as though fully set forth herein.

65. At all times relevant to this action, Defendants Flynn and Sweeney were officers of Local 710 and Trustees and fiduciaries of the Pension Fund.

66. Sections 406(b)(1) and (2) of ERISA, 29 U.S.C. §§ 1406(b)(1) and (2), prohibit a fiduciary from dealing with assets of an employee benefit plan in his or her own interest, and from acting in any transaction involving the plan on behalf of a party adverse to the interest of the plan.

67. Flynn and Sweeney, as officers of Local 710, were parties in interest to the Fund.

68. As Local officers and Pension Fund Trustees, Flynn and Sweeney allowed the Pension Fund's assets to be spent to design, build and lavishly furnish their offices in the Mokena building.

69. Further, as Local officers and Pension Fund Trustees, Flynn and Sweeney were involved on both sides of the transaction.

70. By their actions, Flynn and Sweeney violated Section 406(b)(1) of ERISA, 29 U.S.C. § 1406(b)(1), by dealing with the Pension Fund's assets in their own interest.

71. Further, as both Trustees of the Pension Fund and officers of Local 710, Flynn and Sweeney violated Section 406(b)(2) of ERISA, 29 U.S.C. § 1406(b)(2), by acting on both sides of the transaction.

72. Pursuant to Section 409 of ERISA, 29 U.S.C. § 1109, Flynn and Sweeney are obligated to reimburse the Pension Fund for its losses due to their self-dealing actions.

WHEREFORE, the Plaintiff Pension Fund, by and through its Board of Trustees, respectfully requests the Court to enter judgment in its favor; to award the Fund the losses it incurred on the building due to Flynn and Sweeney's self-dealing plus interest equal to the Fund's investment returns from on or about January 1, 2010 until final resolution of this action; reasonable attorneys' fees and costs; and such further equitable relief as the Court may deem appropriate to enforce the provisions of Title I of ERISA.

## COUNT IV
### Welfare Fund v. All Defendants
### Breach of Fiduciary Duty

73. Plaintiffs incorporate by reference paragraphs 1 through 72 above as though fully set forth herein.

74. During the period from 2000 to 2014, the Former Trustees served as Trustees of the Pension Fund and the Welfare Fund and exercised discretion with respect to the purchase of furniture and fixtures for the Welfare Fund's office space in Mokena.

75. The Former Trustees knowingly used Pension Fund assets to purchase furniture and fixtures for the Welfare Fund without seeking reimbursement for this cost.

76. The Former Trustees were fiduciaries of the Pension and Welfare Funds pursuant to Sections 3(21)(A) (i) and (iii) of ERISA, 29 U.S.C. §§ 1002 (21)(A)(i) and (iii) when the furniture and fixtures were purchased.

77. As fiduciaries to both Funds, the Former Trustees were obligated to ensure that both Funds engaged in an arm's-length transaction regarding the furniture and fixtures purchase.

78. After a DOL investigation, the Welfare Fund reimbursed the Pension Fund for the cost of the furniture and fixtures.

79. However, because of their actions, the Former Trustees caused the Welfare Fund to incur excise taxes that must be paid to the IRS.

80. By such conduct, the Former Trustees breached their fiduciary duty to the Welfare Fund in violation of Sections 404(a)(1)(A)(i) and (B) of ERISA, 29 U.S.C. §§ 1104(a)(1)(A)(i) and (iii).

81. Pursuant to Section 409 of ERISA, 29 U.S.C. § 1109, due to their unlawful actions, the Former Trustees are obligated to reimburse the Welfare Fund for the full amount of the excise tax it pays to the IRS.

WHEREFORE, the Plaintiff Welfare Fund, by and through its Board of Trustees, respectfully requests the Court to enter judgment in its favor; to award the Fund the amount of the excise tax it must pay for the Pension Fund's gifting of furniture and fixtures to it; reasonable attorneys' fees and costs; and such further equitable relief as the Court may deem appropriate to enforce the provisions of Title I of ERISA.

## COUNT V
### Welfare Fund v. All Defendants
### Prohibited Transaction

82. Plaintiffs incorporate by reference paragraphs 1 through 81 above as though fully set forth herein.

83. The DOL, upon its investigation of the Pension Fund, determined that by purchasing furniture and fixtures for the Welfare Fund and not obtaining payment from that Fund for the furniture and fixtures, the Former Trustees engaged in a prohibited transaction in violation of Sections 406(a)(1)(C) and (D) of ERISA, 29 U.S.C. § 1106(a)(1)(C) and (D).

84. Because of their prohibited transaction, the Welfare Fund must pay an excise tax to the IRS in an amount currently estimated to be more than $36,000.

85. Had the Former Trustees not permitted this transaction, the Welfare Fund would not have incurred the IRS excise tax.

86. Pursuant to Section 409 of ERISA, 29 U.S.C. § 1109, due to their unlawful actions, the Former Trustees are obligated to reimburse the Welfare Fund for the full amount of the excise tax it pays to the IRS.

WHEREFORE, the Plaintiff Welfare Fund, by and through its Board of Trustees, respectfully requests the Court to enter judgment in its favor; to award the Fund the amount of the excise tax it must pay for the Pension Fund's gifting of furniture and fixtures to it; reasonable attorneys' fees and costs; and such further equitable relief as the Court may deem appropriate to enforce the provisions of Title I of ERISA.

Dated: July 28, 2017

Respectfully submitted,

WILLIG, WILLIAMS & DAVIDSON

　/s/　Linda M. Martin
LINDA M. MARTIN, ESQUIRE
JOHN R. BIELSKI, ESQUIRE
1845 Walnut Street, 24th Floor
Philadelphia, PA  19103
LMM office　　　　(215) 656-3665
JRB office　　　　(215) 656-3654
Fax　　　　　　　(215) 561-5135
Email:  lmartin@wwdlaw.com
　　　　jbielski@wwdlaw.com

ILLINOIS ADVOCATES, LLC

　/s/　William M. Tasch
WILLIAM M. TASCH, ESQUIRE
77 W. Washington Street, Suite 2120
Chicago, IL  60602
Office:　　　　　(312) 818-6700
Fax:　　　　　　(312) 492-4804
Email:  william.tasch@iladvocates.com

MORGAN, LEWIS & BOCKIUS, LLP

　/s/　Thomas K. Wotring
THOMAS K. WOTRING, ESQUIRE
(*pro hac vice* application forthcoming)
1111 Pennsylvania Avenue, NW
Washington, DC 20004-2541
Office:　　　　　(202) 739-5290
Fax:　　　　　　(202) 739-3001
Email:  thomas.wotring@morganlewis.com

　/s/　James P. Looby
JAMES P. LOOBY, ESQUIRE
77 West Wacker Drive, 5th Floor
Chicago, IL 60601
Office:　　　　　(312) 324-1181
Fax:　　　　　　(312) 324-1001
Email:  james.looby@morganlewis.com

*Counsel for Plaintiff Funds and Trustees*

18