# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| I.B. of T. Union Local No. 710 Pension Fund, by and through Board of Trustees, Thomas Conelias, Bernard Sherlock, Delmar Schaefer, Samuel Pilger, Gary Caldwell, and Daniel Hoyer, <br><br> Plaintiff, <br><br> v. <br><br> Patrick Flynn, Michael Sweeney, Neal London, and Hugh Roberts, Jr., <br><br> Defendants. | No. 17-cv-05532 <br><br> Judge John J. Tharp, Jr. |

## MEMORANDUM OPINION AND ORDER

Plaintiff International Brotherhood of Teamsters Local Union No. 710 Pension Fund ("Fund") is a multiemployer pension fund which exists to provide retirement benefits to its participants. In its amended complaint, the Fund alleges that Patrick Flynn, Michael Sweeney, Neal London, and Hugh Roberts, Jr., its former trustees (collectively the "Former Trustees"), breached their fiduciary duties to the Fund in violation of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001-1461. The Former Trustees moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. For the reasons discussed below, the motion is granted in part and denied in part.

## BACKGROUND[1]

The Fund is sponsored by the Teamsters Local Union No. 710 ("Local 710") and provides retirement benefits to its participants by obtaining contributions from employers that are parties to

---

[1] The facts alleged in the complaint, as summarized here, are presumed true for purposes of this motion. *Zemeckis v. Global Credit & Collection Corp.*, 679 F.3d 632, 634 (7th Cir. 2012).

collective bargaining agreements with the Union. The Fund is administered by a Board of Trustees, on which the defendants served from 2000 to 2014.[2] Compl. ¶ 14. During their tenure, the Former Trustees retained Commonwealth Realty Advisors, Inc. to assess the feasibility of constructing a new office building to house the Pension Fund and provide rentable space for additional tenants. In 2006, Commonwealth Realty produced a report recommending that the Fund purchase land and construct a 5,000 to 10,000 square-foot building. *Id.* at ¶¶ 17, 18. After the report was produced, however, the economy entered into a recession and the real estate market experienced a dramatic decline. *Id.* at ¶ 22. Nevertheless, in 2008 the Former Trustees approved the purchase of a lot in Mokena, Illinois for $697,775.50. In January 2009, Commonwealth Realty ordered an appraisal of a building on the lot that would provide 30,000 square feet of rentable property; the report estimated that the value of such a building would be $6,300,000 at stable occupancy. *Id.* at ¶ 24, Ex.1. In February 2009, construction on a 30,000 square-foot building (only 26,411 square feet of which were rentable) commenced. *Id.* at ¶¶ 20, 21. Once completed, the Pension Fund moved in and leased most of the remaining rental space to Local 710 and another business. The Fund, however, was unable to lease four thousand square feet of the building, which remain unoccupied. *Id.* at ¶¶ 25, 28.

On July 18, 2014, Local 710's Independent Review Board issued a report discussing a loan that Local 710 had fabricated to cover up a transaction it had entered into with the Former Trustees for the acquisition of furniture and equipment for the new building. *Id.* at ¶ 30. The report revealed

---

[2] The Former Trustees claim that defendant Michael Sweeney did not become a trustee until March 9, 2012. Defendants' Memorandum of Law in Support of Their Motion to Dismiss Plaintiff's Amended Complaint 2 n.1, ECF No. 29. When assessing a Rule 12(b)(6) motion to dismiss, however, courts must accept facts alleged in the complaint as true and refrain from considering matters outside of the complaint. *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012). The Court therefore excludes defendants' statement regarding Michael Sweeney from its analysis.

2

that defendants Sweeney and Flynn, who allegedly served as officers of Local 710 during the same time they served as trustees for the Fund, used the furniture (which had been purchased by the Former Trustees and included televisions, bar stools, ice makers, and wine reserves) in their personal workspaces and in Local 710 common areas in the new building.[3] *Id.* at Ex. 1. Notably, the terms of the construction project excluded the purchase of furniture on behalf of Local 710 as a permissible expense. *Id*. Based on the Independent Review Board's report, the Fund retained Real Estate Investments Strategies, Inc. ("REIS") to conduct a study of the entire history of the land purchase and office building construction. *Id.* at ¶¶ 30, 31. On November 26, 2014, REIS reported that, prior to construction, the Former Trustees had failed to obtain an updated market analysis examining the reasonableness of building a 30,000 square-foot building and the prospect of leasing the entire net rentable space of the building. *Id.* at ¶ 33. The Department of Labor ("DOL") also investigated the Former Trustees and found that they had "violated several provisions of ERISA." *Id.* at Ex. 1.

On July 28, 2017, the Fund filed suit against the Former Trustees, alleging that their conduct violated the section of ERISA regulating the responsibilities of fiduciaries and caused the Fund to incur losses of nearly three million dollars. *Id.* at ¶ 52. The Fund subsequently filed an amended complaint (ECF No. 25), which the Former Trustees moved to dismiss under Federal Rule of Civil Procedure 12(b)(6), focusing primarily on ERISA's statute of limitations.

---

[3] When the Independent Review Board issued its report in July 2014, Flynn and Sweeney were removed as Fund trustees. Compl. ¶¶ 6-7. Defendants Neal London and Hugh Roberts, Jr. (who were not officers of Local 710) resigned as Fund trustees in November 2014 and February 2015, respectively. *Id.* at ¶¶ 10-11.

3

# DISCUSSION

Federal Rule of Civil Procedure 8(a) requires plaintiffs to include in their pleading "a short and plain statement of the claim showing that the pleader is entitled to relief." To survive a Rule 12(b)(6) motion to dismiss, then, a complaint need only set forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In deciding 12(b)(6) motions, courts must accept the facts alleged in the complaint as true and draw all permissible inferences in the plaintiff's favor. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

As noted above, the Pension Fund's claims are premised on ERISA. In relevant part, ERISA requires pension plan fiduciaries to discharge their duties "solely in the interest of the participants and beneficiaries" with

> the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.

29 U.S.C. § 1104. It further provides that a fiduciary shall not "cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect furnishing of goods, services, or facilities between the plan and a party in interest" or "deal with assets of the plan in his own interest or for his own account." § 1106(a), (b).

The complaint alleges that the Former Trustees breached their fiduciary duties by 1) constructing the office building to benefit interested parties without obtaining an accurate and up-to-date assessment of the recession's effects on the project in violation of § 1104 (Count I) and 2) using Fund assets to design and lavishly furnish the building to benefit interested parties (here, Flynn and Sweeney, whose Local 710 offices were in the building) in violation of § 1106(a) (Count II). Relatedly, the Fund further alleges that Flynn and Sweeney (as Fund Trustees *and* Local 710 officials) engaged in self-dealing in violation of § 1106(b) by participating on both sides of the furniture transaction (Count III). In their motion to dismiss, the Former Trustees argue that the

4

complaint as a whole is untimely and that Count I otherwise fails to state a claim upon which relief can be granted.[4] Pursuant to the following analysis, the Court agrees that ERISA's statute of limitations bars the claim asserted in Count I. As such, it is dismissed, and the Court need not assess whether it survives Rule 12's plausibility standard. The face of the complaint does not, however, establish that the claim involving the furniture transaction is untimely; that claim may proceed under the legal theories presented in Counts II and III.

## Statute of Limitations

A plaintiff need not anticipate and overcome affirmative defenses (such as the statute of limitations) in its complaint. That said, there is nothing "improper," as the plaintiffs argue, about bringing a motion to dismiss premised on the applicable statute of limitations where "the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense . . . ." *United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005), *as amended on denial of reh'g and reh'g en banc* (Aug. 11, 2005). Dismissal is warranted if a plaintiff "pleads itself out of court" by alleging facts, accepted as true, that establish that its claims are untimely. *Indep. Tr.*

---

[4] To be clear, Rule 12(b)(6) speaks to the dismissal of "claims," not of "counts." A claim is a collection of facts that could entitle the plaintiff to relief under some legal theory. *See Andersen v. Vill. of Glenview*, 17-CV-05761, 2018 WL 6192171, at *5 (N.D. Ill. Nov. 28, 2018). Different claims may be presented in different counts, but a count is not a claim per se because plaintiffs also use counts to set forth multiple legal theories regarding the same set of facts (*i.e.*, regarding the same claim). Here, the Court reads the complaint to assert two claims in three counts. The first claim is premised on allegations regarding the initial purchase of the lot and construction of the office building and is presented in Count I (and to some extent Count II). The second claim is premised on the subsequent furnishing of the building and is presented under two separate legal theories, one in Count II (which applies to all defendants) and the other in Count III (which applies to only defendants Sweeney and Flynn). The repetition of the same facts in multiple counts does not create additional claims, but rather alternate theories of liability. *See NAACP v. Am. Family Mut. Ins. Co.*, 978 F.2d 287, 292 (7th Cir. 1992) ("One set of facts producing one injury creates one claim for relief."). The Former Trustees appear to argue, then, that both claims are time barred but that only the claim regarding the construction of the building fails to meet the pleading standard required by Rule 12(b)(6).

5

*Corp. v. Stewart Info. Services Corp.*, 665 F.3d 930, 935 (7th Cir. 2012); *Brooks v. Ross,* 578 F.3d 574, 579 (7th Cir. 2009). The Fund has done so with respect to its claim regarding the initial construction of the office building, but not with respect to its claim regarding the subsequent furnishing of Flynn's and Sweeney's offices.

The section of ERISA setting forth the statute of limitations governing both claims provides that no action may be commenced "after the earlier of

> (1) six years after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission the latest date on which the fiduciary could have cured the breach or violation, or
>
> (2) three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation;
>
> except that in the case of fraud or concealment, such action may be commenced not later than six years after the date of discovery of such breach or violation.

29 U.S.C. § 1113. According to the complaint, the Fund lacked actual knowledge of the Former Trustees' alleged misconduct until REIS issued its report on November 26, 2014. Three years after that date for purposes of § 1113(2) would be November 26, 2017—some four months after the Fund initiated this lawsuit. Based solely on subsection (2), the claim would be timely. But because § 1113 requires the ***earlier*** of two dates be used for limitations purposes, the Court must also assess, pursuant to § 1113(1), the latest date constituting part of the breach or on which the Former Trustees could have cured the breach. In doing so, the Court addresses the claims one at a time.

I. **Construction Claim**

Count I focuses entirely on the Former Trustees' approval of the construction project without obtaining an updated and accurate analysis of its investment value after the economy entered into a recession. *See* Compl. ¶ 51 ("A prudent man in the Former Trustees' position would have taken the reasonable and necessary steps to ensure that between 2006 and February 2009, no significant events occurred or factors changed that would impact the feasibility of moving forward

6

with construction of the Mokena building."). Based on the face of the complaint, then, the trustees could have re-assessed the prudence of going forward with the project (*i.e.*, cured the breach pursuant to § 1113(1)(B)) only until—at the very latest—the time construction began in February 2009. The limitations period for the construction claim therefore expired in February 2015—six years later—because that date is earlier than the November 26, 2017 date calculated under § 1113(2). Since the Pension Fund did not file its initial complaint until July 2017, the claim asserted in Count I is time barred.

The Fund attempts to avoid that conclusion by urging the Court to include in its understanding of the construction claim the Former Trustees' "failure to review and monitor the Mokena investment" post-construction. Plaintiffs' Brief in Opposition to Defendants' Motion to Dismiss 8, ECF No. 35. As the Supreme Court has explained, "[a] plaintiff may allege that a fiduciary breached the duty of prudence by failing to properly monitor investments and remove imprudent ones." *Tibble v. Edison Int'l*, 135 S. Ct. 1823, 1829 (2015). But the duty to monitor an investment is "separate and apart from the trustee's duty to exercise prudence in selecting investments at the outset," *id.* at 1828, and a claim premised on that duty would involve different facts than the pre-construction claim. Whether the Former Trustees failed to extract the Fund from their allegedly imprudent investment after the fact, then, has no effect on the timeliness of a claim premised, as here, on the initial approval of the project. The amended complaint speaks ***only*** to failures to reconsider the construction of the building in light of the changed conditions prevailing during the recession; any argument that the complaint alleges a separate failure to monitor claim is without merit. *See, e.g.,* Am. Compl. Count I ¶ 46 ("with respect to the construction of . . . the office building"); ¶ 47 ("at all times relevant to the consideration of constructing a building"); ¶ 48 ("without obtaining an updated analysis to determine if construction was prudent"); ¶ 50 ("had

7

the Former Trustees obtained an updated analysis of the building project before commencing construction"); ¶ 51 ("between 2006 and February, 2009"); ¶ 54 (""failure to obtain an updated analysis prior to commencing construction"). Indeed, the amended complaint does not even include the word "monitor." The closest the Fund comes to alleging such a claim is its statement that "due to the Former Trustees' inaction, the Pension Fund lost investment returns in an amount to be determined at trial." Compl. ¶ 53. But even drawing all reasonable inferences in the Fund's favor, that vague and solitary statement is insufficient to state a claim for relief.

The Fund also attempts to invoke the "fraud or concealment" exception to ERISA's statute of limitations. Plaintiff's Response Brief at 10. In doing so, it points to its assertion that it was unaware of the complained-of conduct until November 2014. Compl. ¶ 35. But that statement, without more, does not suggest that the Former Trustees delayed the Fund's discovery of its claim "either by misrepresenting the significance of facts the beneficiary is aware of (fraud) or by hiding facts so that the beneficiary does not become aware of them (concealment)." *Radiology Ctr., S.C. v. Stifel, Nicolaus & Co.*, 919 F.2d 1216, 1220 (7th Cir. 1990). In other words, it is simply unreasonable to infer from the Fund's lack of actual knowledge regarding the circumstances surrounding the building's construction that the Former Trustees were engaged in fraud or concealment.

It is true enough that, as the Fund argues, it is not required to "plead around" the defendants' statute of limitations defense. But dismissal is warranted where the allegations of the complaint show a claim to be time-barred and provide no inkling that there may be a basis to toll the limitations period. *See, e.g.*, *Logan v. Wilkins,* 644 F.3d 577, 582-83 (7th Cir. 2011) (affirming dismissal of complaint where allegations established that conspiracy claim was untimely and plaintiff failed to allege any facts in support of allegation that defendants "actively concealed" the

8

conspiracy); *Lakin v. Skaletsky*, 327 F. App'x 636, 637 (7th Cir. 2009) (affirming dismissal of complaint where plaintiff could not identify a viable basis for invoking equitable tolling; a "plaintiff seeking equitable tolling bears the burden of establishing that he pursued his rights diligently and that some extraordinary circumstance stood in his way."). To allow mere incantations of "equitable tolling" or "fraudulent concealment" to defeat a motion to dismiss would mean that no motion to dismiss could ever be granted on statute of limitations ground even where the allegations of the complaint show the claim to be untimely. In other words, it would imbue "formulaic recitations" with complaint saving properties that are inconsistent with federal pleading standards that give no effect to conclusory allegations. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). "[I]f the facts pleaded in the complaint establish that a claim is time barred, as they do here, a bare allegation of fraudulent concealment, without more, will not save the claim."[5] *Logan,* 644 F.3d at 582.

---

[5] The Seventh Circuit's requirement to plead something more than a bare allegation of fraudulent concealment demands much less from plaintiffs than do the standards imposed by some other courts. In *Janese v. Fay*, 692 F.3d 221 (2d Cir. 2012), for example, the Second Circuit held that plaintiffs invoking ERISA's fraudulent concealment exception must comply with the heightened pleading standards of Fed. R. Civ. P. 9(b):

> To successfully plead this 'fraud or concealment exception,' a complaint must allege that a fiduciary either (1) breached its duty by making a knowing misrepresentation or omission of a material fact to induce an employee/beneficiary to act to his detriment; or (2) engaged in acts to hinder the discovery of a breach of fiduciary duty. Moreover, these allegations must be stated 'with particularity,' requiring a plaintiff to specify the time, place, speaker, and content of the alleged misrepresentations, as well as how the misrepresentations were fraudulent and "those events which give rise to a strong inference that the defendant had an intent to defraud, knowledge of the falsity, or a reckless disregard for the truth.

*Id*. at 228 (internal textual alterations, quotation marks, and citations omitted).

9

The same goes for the Fund's allegation that Local 710 fabricated a loan "to cover-up a transaction with the Pension Fund trustees for the purchase of furniture," Compl. ¶ 30, at least with respect to this claim. As far as the Court can tell, Local 710's alleged cover up of the subsequent furniture transaction has little bearing on the Former Trustees' initial purchase of the lot and construction of the building, and the Fund has not attempted to explain the connection. Accordingly, the Court finds that the complaint establishes that the construction claim is untimely and is devoid of any allegations suggesting that the limitations period should be tolled; the Fund's response brief suggests none either. It therefore dismisses that claim without reaching the question of its facial plausibility.

## II.   Furniture Transaction Claim

The Former Trustees argue that the February 2015 limitations expiration date should also be used for the claim asserted in Counts II and III. Their contention that this claim involves no conduct after the construction project began, however, ignores the alleged conduct involving the furnishing of the building, which clearly forms at least part of the basis for both counts. *See* Compl. ¶ 63 ("[T]he Former Trustees . . . caused the expenditure of Pension Fund assets to build ***and lavishly furnish*** Trustees Flynn's and Sweeney's union offices") (emphasis added); ¶ 71 (same). And it is clear that at least some of the conduct at issue with respect to the furniture transaction post-dated the commencement of construction in February 2009. Although the complaint itself does not state when the furniture transaction in question occurred, it relies on the Department of Labor report attached to the complaint, which indicates that title to the furnishings was transferred to Local 710 by May 11, 2010. Compl. Ex 1 at 6 n.5.

Still, this claim, too, appears to be time-barred based on that conduct because the limitations period would have expired in May 2016 (six years post-transaction) and the Fund did

not file its initial complaint until July 2017. Unlike the construction claim, however, the furniture transaction claim does contain the kernels of an argument that could develop into a basis for tolling the statute of limitations on fraud or concealment grounds. As noted above, the complaint alleges that Local 710 fabricated a loan to "cover-up" the transaction and that soon after the fabrication came to light, Flynn and Sweeney were removed as trustees of the Fund. *Id.* at ¶ 30. Contrary to the defendants' argument, these allegations rise above bare allegations of fraud (albeit barely) and are therefore sufficient to defeat the motion to dismiss. Dismissal on statute of limitations grounds is warranted only where the allegations in the complaint, taken as true, demonstrate that the complaint is time-barred. Here, the face of the complaint does not do so, because one could infer from Local 710's fabricated loan and cover-up of the transaction that the Former Trustees, as the parties on the other side of that transaction, also intended for it to be concealed. That inference is bolstered by the fact that Flynn and Sweeney were on both sides of the transaction and that the construction agreement detailing the terms of the project explicitly excluded the purchase of furniture on behalf of the Local as a permissible expense.

Local 710's alleged cover-up of the furniture transaction is thus more closely related to potential fraud or concealment by the Former Trustees with respect to that transaction than it is to potential fraud or concealment with respect to the initial construction. Accordingly, the Court concludes that the furnishing claim cannot be appropriately dismissed at this juncture. And since the defendants make no argument that this claim is otherwise facially implausible, the claim survives the motion to dismiss.

\*   \*   \*

For these reasons, the Former Trustees' motion to dismiss is granted as to Count I and denied as to Counts II and II. The dismissal of Count I is without prejudice. If facts exist which

11

the Fund believes plausibly demonstrate fraud or concealment, it may assert them in an amended complaint. *See Kyles v. Staff Mgmt., Inc.*, No. 01 C 8697, 2002 WL 31133176 (N.D. Ill. July 30, 2002) (dismissing complaint without prejudice to allow plaintiff to amend complaint to allege facts warranting equitable tolling). Any amended complaint must be filed by April 20, 2019.

Dated: March 20, 2019

John J. Tharp, Jr.
United States District Judge